1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9

10

AMY GRANAT, et al.,

No.  2:15-cv-00605-MCE-DB

11

Plaintiffs,

12

v.

**MEMORANDUM AND ORDER**

13

UNITED STATES DEPARTMENT OF
AGRICULTURE, et al.,

14

Defendants.

15

16       Plaintiffs Amy Granat, Corky Lazzarino, the Sierra Access Coalition, the California

17    Off-Road Vehicle Association, and the Counties of Butte and Plumas filed this action

18    against numerous federal defendants challenging the United States Forest Service's

19    2010 decision to close hundreds of miles of roads in the Plumas National Forest to

20    motorized vehicles.  Presently before the Court are Plaintiffs' Motion for Summary

21    Judgment ("MSJ") and Defendants' Cross-Motion for Summary Judgment.  ECF Nos. 31,

22    37.[1]  For the following reasons, Plaintiffs' motion is DENIED and Defendants' motion is

23    GRANTED.[2]

24    _____

       [1] Defendants also made a Motion to Strike declarations filed by Plaintiffs in support of their MSJ.
25    ECF No. 36.  They argue that the declarations constitute improper attempts to supplement the
      administrative record.  Defs.' Mem. in Supp. of Mot. to Strike, ECF No. 36-1, at 2.  Plaintiffs, for their part,
26    argue that the declarations establish standing to challenge the Defendants' actions.  Pls.' Resp. to Mot. to
      Strike, ECF No. 39, at 1.  The Court acknowledges Plaintiffs' standing argument and disregards the
27    declarations for any other purpose.

28       [2] Because oral argument would not have been of material assistance in rendering a decision, the
      Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1

1

2

**BACKGROUND**

In 2005, the U.S. Forest Service issued the Travel Management Rule.  Travel Management, 70 Fed. Reg. 68,264 (Nov. 9, 2005) (codified at 36 C.F.R. pts. 212, 251, 261, 295).  Relevant to the current litigation, that rule requires the Forest Service to designate a system of roads, trails, and areas open to motor vehicle use by vehicle type and time of year.  36 C.F.R. § 212.50(a).  "After these roads, trails, and areas are designated, motor vehicle use, including the class of vehicle and time of year, not in accordance with these designations is prohibited . . . ."  Id.

Prior to the enactment of the Travel Management Rule, Plumas National Forest contained approximately 4,267 miles of routes that were designated as part of the National Forest Transportation System ("NFTS"):  4,137 miles of National Forest Service roads and 130 miles of National Forest Service motorized trails.  PLU-B-000053.[3]  The Forest also contained user-created routes.  The Forest Service identified approximately 1,107 miles of such routes.  PLU-B-000052.  In December 2006, the Forest Service closed Plumas National Forest to cross-country motor vehicle travel—including on the user-created routes—while it began implementing the portions of the Travel Management Rule relevant to this lawsuit.  PLU-C-002315.

The Forest Service held a series of public workshops and public meetings, as well as solicited public comment, to help determine which of the user-created routes should be added to the NFTS.  See PLU-B-000058 to -000059.  By April 2007, the Forest Service completed a "first cut" route map, consisting of 220 miles of routes.  PLU-B-000058.  The Forest Service then held another series of public meetings and workshops, allowing the public to identify routes to be considered for inclusion in the NFTS, leading the Forest Service to expand its consideration to 410 miles of routes.  PLU-B-000058, -000081.

---

[3] All citations to the administrative record lodged with the Court are specified following the format used by the parties:  "PLU-[volume]-[bates number]."

2

In December 2008, the Forest Service released its Draft Environmental Impact Statement ("DEIS").  PLU-B-000649.  After another period of public comments, the Forest Service released its Final Environmental Impact Statement ("FEIS") in August 2010.  PLU-B-000039.  Those documents considered four action alternatives in detail for potential additions to the NFTS, as well as a no-action alternative.  On August 30, 2010, the Forest Service released the Record of Decision, which selected Action Alternative 5 from the evaluated alternatives.  PLU-B-000014 to -000016, -000028.  The decision added 234 miles of motorized trails to the extant 130 miles of motorized trails.  PLU-B-000017 to -000018.

On March 18, 2015, Plaintiffs filed the instant suit, challenging the procedures used to implement the resultant Motorized Travel Management Plan.  Compl., ECF No. 1.  Plaintiffs are individuals who visit Plumas National Forest, as well as organizations that represent visitors to the Forest.  Plaintiff Amy Granat has visited the Forest since 2001.  Decl. of Amy Granat, ECF No. 31-4, ¶ 15.  She suffers from a disability that limits her ability to walk, and alleges that the Motorized Travel Management Plan drastically reduced her ability to enjoy the Forest by limiting the areas she can reach by motor vehicle.  Id. ¶¶ 15–16.  Plaintiff Corky Lazzarino also visits Plumas National Forest, and claims that the Motorized Travel Management Plan limits her ability to access parts of the Forest she previously enjoyed.  Decl. of Corky Lazzarino, ECF No. 31-5, ¶¶ 9–10.  Plaintiff California Off-Road Vehicle Association ("CORVA") is a non-profit corporation, whose members have been prevented from using user-created routes that were not added to the NFTS for motorized recreation.  Decl. of Granat, ¶¶ 2, 7.  Plaintiff Sierra Access Coalition is an organization representing its members who previously used routes that were not added to the NFTS.  Decl. of Lazzarino, ¶¶ 3, 5.

Plaintiffs also include two governmental bodies:  Plumas County and Butte County.  Approximately 975,000 acres of the Plumas National Forest are located within Plumas County, while approximately 100,000 acres are located within Butte County.

1    Decl. of Robert Armand Perreault, Jr., ECF No. 31-6, ¶ 4; Decl. of John Michael Crump,

2    ECF No. 31-3, ¶ 4.  Both claim that the Motorized Travel Management Plan limits the

3    ability of their citizens to access Plumas National Forest.  Decl. of Perreault, ¶ 5; Decl. of

4    Crump, ¶ 5.  Plumas County also claims the Motorized Travel Management Plan

5    reduces tourism and thereby harms its citizens who rely on tourism for income, as well

6    as the County's own tax revenues on that income.  Decl. of Perreault, ¶ 6.

7         Defendants are the U.S. Department of Agriculture, the U.S. Forest Service (a

8    subdivision of the Department of Agriculture), and various officers of the Department of

9    Agriculture and Forest Service in their official capacities.

10

11                              **PROCEDURAL FRAMEWORK**

12

13        Congress enacted NEPA in 1969 to protect the environment by requiring certain

14   procedural safeguards before an agency takes action affecting the environment.  The

15   NEPA process is designed to "ensure that the agency . . . will have detailed information

16   concerning significant environmental impacts; it also guarantees that the relevant

17   information will be made available to the larger [public] audience."  Blue Mountains

18   Biodiversity Project v. Blackwood, 161 F.3d 1208, 1212 (9th Cir. 1998) (alterations in

19   original) (quoting Robertson v. Methow Valley Citizens, 490 U.S. 332, 349 (1989)).  The

20   purpose of NEPA is to "ensure a process, not to ensure any result."  Id.  "NEPA

21   emphasizes the importance of coherent and comprehensive up-front environmental

22   analysis to ensure informed decision-making to the end that the agency will not act on

23   incomplete information, only to regret its decision after it is too late to correct."  Ctr. for

24   Biological Diversity v. U.S. Forest Serv., 349 F.3d 1157, 1166 (9th Cir. 2003).  Complete

25   analysis under NEPA also assures that the public has sufficient information to challenge

26   the agency's decision.  Methow Valley Citizens, 490 U.S. at 349; Idaho Sporting Cong.

27   v. Thomas, 137 F.3d 1146, 1151 (9th Cir. 1998).

28   ///

                                            4

NEPA requires that all federal agencies, including the Forest Service, prepare a "detailed statement" that discusses the environmental ramifications, and alternatives, to all "major Federal Actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c).  An agency must take a "hard look" at the consequences, environmental impacts, and adverse environmental effects of a proposed action within an environmental impact statement ("EIS"), when required.  Kleppe v. Sierra Club, 427 U.S. 390, 410 n.21 (1976).

Given its status as a statutory scheme safeguarding procedure rather than substance,[4] NEPA does not mandate that an EIS be based on a particular scientific methodology, nor does it require a reviewing court to weigh conflicting scientific data. Friends of Endangered Species, Inc. v. Jantzen, 760 F.2d 976, 986 (9th Cir. 1985).  An agency must be given discretion in relying on the reasonable opinions of its own qualified experts, even if the court might find contrary views more persuasive.  See, e.g., Kleppe, 427 U.S. at 420, n.21.  NEPA does not allow an agency to rely on the conclusions and opinions of its staff, however, without providing both supporting analysis and data.  Idaho Sporting Cong., 137 F.3d at 1150.  Credible scientific evidence that contraindicates a proposed action must be evaluated and disclosed.  40 C.F.R. § 1502.9(b).

Because NEPA itself contains no provisions allowing a private right of action, see Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990), a party can obtain judicial review of alleged violations of NEPA only under the waiver of sovereign immunity contained within the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.  Earth Island Inst. v. U.S. Forest Serv., 351 F.3d 1291, 1300 (9th Cir. 2005).

Under the APA, the court must determine whether, based on a review of the agency's administrative record, agency action was "arbitrary and capricious," outside the scope of the agency's statutory authority, or otherwise not in accordance with the law.

---

[4] The National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600–14, provides for substantive, as opposed to procedural protection with regard to actions that affect the environment.  Plaintiffs have not alleged any violation of the NFMA through this lawsuit.

1   Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1356 (9th Cir. 1994).

2   Review under the APA is "searching and careful." Ocean Advocates, 361 F.3d at 1118.

3   However, the court may not substitute its own judgment for that of the agency. Id. (citing

4   Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), overruled on

5   other grounds by Califano v. Sanders, 430 U.S. 99 (1977)).

6        In reviewing an agency's actions, then, the standard to be employed is decidedly

7   deferential to the agency's expertise. Salmon River, 32 F.3d at 1356.  Although the

8   scope of review for agency action is accordingly limited, such action is not

9   unimpeachable.  The reviewing court must determine whether there is a rational

10   connection between the facts and resulting judgment so as to support the agency's

11   determination. Balt. Gas and Elec. v. Nat'l Res. Def. Council, Inc., 462 U.S. 87, 105–06

12   (1983) (citing Bowman Trans. Inc. v. Ark.-Best Freight Sys. Inc., 419 U.S. 281, 285–86

13   (1974)).  An agency's review is arbitrary and capricious if it fails to consider important

14   aspects of the issues before it, if it supports its decisions with explanations contrary to

15   the evidence, or if its decision is either inherently implausible or contrary to governing

16   law. Lands Council v. Powell, 395 F.3d 1019, 1026 (9th Cir. 2005).

17

18                                **STANDARD**

19

20        Summary judgment is an appropriate procedure in reviewing agency decisions

21   under the dictates of the APA. See, e.g., Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.,

22   18 F.3d 1468, 1471–72 (9th Cir. 1994).  Under Federal Rule of Civil Procedure 56,

23   summary judgment may accordingly be had "where, viewing the evidence and the

24   inferences arising therefrom in favor of the nonmovant, there are no genuine issues of

25   material fact in dispute." Id. at 1472.  In cases involving agency action, however, the

26   court's task "is not to resolve contested facts questions which may exist in the underlying

27   administrative record," but rather to determine whether the agency decision was arbitrary

28   and capricious as defined by the APA and discussed above. Gilbert Equip. Co. v.

1  Higgins, 709 F. Supp. 1071, 1077 (S.D. Ala. 1989); aff'd, 894 F.2d 412 (11th Cir. 1990);

2  see also Occidental Eng'g Co. v. Immigration & Naturalization Serv., 753 F.2d 766, 769

3  (9th Cir. 1985).  Consequently, in reviewing an agency decision, the court must be

4  "searching and careful" in ensuring that the agency has taken a "hard look" at the

5  environmental consequences of its proposed action.  Ocean Advocates v. U.S. Army

6  Corps of Eng'rs, 402 F.3d 846, 858-59 (9th Cir. 2005); Or. Nat. Res. Council v. Lowe,

7  109 F.3d 521, 526 (9th Cir. 1997).

8

9                                           **ANALYSIS**

10

11         Plaintiffs make several challenges to the Motorized Travel Management Plan,

12  claiming that Defendants violated NEPA, the Travel Management Rule, or otherwise

13  acted arbitrarily and capriciously.  The Court addresses each in turn.

14      **A.    Defendants' "First Cut" Did Not Violate NEPA or the Travel
               Management Rule**
15

16         Plaintiffs first challenge Defendants' so-called "first cut," claiming that the initial

17  rejection of 697 miles of the unauthorized trails violates NEPA's "rule of reason" and

18  ignores factors enumerated in the Travel Management Rule.  See Pls.' Resp. & Reply,

19  ECF No. 38, at 1–3 (citing Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 767 (2004)).

20  Plaintiffs, however, fail to demonstrate why Defendants' approach was unreasonable

21  and misconstrue the Travel Management Rule.

22         Plaintiffs challenge the sufficiency of the data Defendants used in performing their

23  "first cut."  Pls.' MSJ, at 12.  They complain that "[o]nly 410 of the unclassified miles . . .

24  received any on-site environmental impacts review."  Id.  Thus, they conclude, "the

25  Forest Service ignored its duties to identify, evaluate, and disclose on-site conditions

26  before determining whether the routes actually met the environmental and recreational

27  criteria of the Travel Management Rule."  Id. at 13.  It is unclear, however, what exactly

28  Plaintiffs would deem sufficient.  They reject Defendants' contention that they are

1  "demand[ing] that every inch of all 1,107 miles of the Plumas National Forest's non-

2  system routes be analyzed for inclusion in the [NFTS]," and instead object to the fact that

3  Defendants "fail[ed] to verify on the ground its resource and access analyses for <u>any</u> of

4  the some 700 miles of non-system routes that the project shut down." Pls.' Resp. &

5  Reply, at 1–3. Plaintiffs do not, however, provide any suggestion as to how much "on

6  the ground" verification would have been sufficient, and fail to demonstrate that

7  additional verification would have provided any information relevant to the project. The

8  rule of reason analysis is "a pragmatic judgment whether the EIS's form, content[,] and

9  preparation foster both informed decision-making and informed public participation."

10  <u>Native Ecosystems Council v. U.S. Forest Serv.</u>, 418 F.3d 953, 960 (9th Cir. 2005)

11  (quoting <u>California v. Block</u>, 690 F.2d 753, 761 (9th Cir. 1982)). Thus, a successful

12  challenge to Defendants' actions here must do more than merely identify the miles that

13  did not receive on-site analysis and claim that Defendants did not perform sufficient

14  verification of "any" of those miles.

15  Defendants populated their inventory of routes by relying on "previous records,"

16  such as "maintenance plans, maintenance expenditures, existing road and trail atlases,

17  forest maps, etc." PLU-B-000052. They then made their first cut, "avoid[ing] routes on

18  private land with no right of way, routes where motorized use would conflict with existing

19  uses, and routes with measurable resource impacts." PLU-B-000058. Next, Defendants

20  asked the public "to identify which of the routes and areas should become part of the

21  proposed action, the type of use that each would have, and routes to be considered for

22  dispersed recreation access." <u>Id.</u>

23  Plaintiffs have identified seventeen routes that they complain did not receive "on

24  the ground" verification, but they do not identify what information would have been

25  discovered by such verification. Pls.' Resp. & Reply, at 2 n.1. Defendants analyzed all

26  seventeen of those routes, and provided reasons for their exclusion. <u>See</u> PLU-D-

27  012271 to -012273. Plaintiffs have not shown that their requested "on the ground"

28  ///

1    verification would have discounted the factual bases for those exclusions.[5]  Indeed,

2    courts in this District have previously rejected similar attacks on the adequacy of the

3    Forest Service's data in other cases.  See, e.g., Friends of Tahoe Forest Access v. U.S.

4    Dep't of Agric., Tr. of Proceedings Held on Nov. 22, 2013 at 65, No. 2:12-cv-01876-JAM-

5    CAD (ED. Cal. Dec. 19, 2013) (rejecting a claim based on a failure to provide "site-

6    specific analyses" of each excluded route because "the defendants screened and

7    analyzed all the unauthorized routes, and included a rational explanation why each route

8    was not proposed for addition to the NFTS"); Ctr. for Sierra Nevada Conservation v. U.S.

9    Forest Serv., 832 F. Supp. 2d 1138, 1160 (E.D. Cal. 2011) (finding reasonable the

10   Forest Service's reliance on GIS data and "field assessments" of only those

11   "unauthorized routes proposed for designation").

12        Plaintiffs also contend that "[e]ven if [Defendants] had adequately verified [their]

13   data," the "first cut" did not comport with the Travel Management Rule because it did not

14   consider the enumerated factors contained in that Rule.  Pls.' Resp. & Reply, at 2–3

15   (citing 36 C.F.R. § 212.55(a)).  However, the Travel Management Rule only requires

16   such factors to be considered when "designating National Forest System roads, National

17   Forest System trails, and areas on National Forest System lands for motor vehicle use."

18   36 C.F.R. § 212.55(a) (emphasis added).  In its "first cut," Defendants did not designate

19   any routes as part of the NFTS, but instead took a first pass at identifying which routes

20   would be considered for designation.  Accordingly, the factors articulated in the Travel

21   Management Rule were inapplicable to the 697 miles of unauthorized routes that did not

22   make the "first cut."  Cf. Klamath-Siskiyou Wildlands Ctr. v. Graham, 899 F. Supp. 2d

23   948, 964 (E.D. Cal. 2012) (rejecting the plaintiff's contention that the Forest Service

24   needed to conduct a "comprehensive environmental assessment of the entire NFTS"

25   ///

26   _____
         [5] Plaintiffs point to two maps that they claim show the data used by Defendants was inaccurate,
27   see Pls.' Resp. & Reply, at 2, but Plaintiffs do not identify any routes that were eliminated by this
     supposedly inaccurate data, let alone that on-site analysis would have corrected these supposed
28   inaccuracies.

1  because the project was limited to whether it "should allow motorized use on previously

2  unauthorized roads").

3              **B.      Defendants Considered a Reasonable Range of Alternatives**

4              Plaintiffs similarly claim that the Defendants' "first cut" methodology prevented

5  Defendants from considering a reasonable range of alternatives, as required by NEPA.

6  Pls.' MSJ, at 16–17.  Plaintiffs rely primarily on a document promulgated by the Council

7  on Environmental Quality ("CEQ"), see Pls.' MSJ, at 17–18, which states:  "An

8  appropriate series of alternatives might include dedicating 0, 10, 30, 50, 70, 90 or 100

9  percent of the Forest to wilderness," Forty Most Asked Questions Concerning CEQ's

10  National Environmental Policy Act Regulations, 46 Fed. Reg. 18,026, 18,027 (Mar. 23,

11  1981) [hereinafter Forty Questions].  By only considering about 33% of the unauthorized

12  routes, the Forest Service did not consider "a reasonable range of alternatives under the

13  CEQ [document]."  Pls.' MSJ, at 18.  However, even if the CEQ document is "'entitled to

14  substantial deference' as an interpretation of NEPA," Block, 690 F.3d at 769 (quoting

15  Andrus v. Sierra Club, 442 U.S. 347, 357 (1979)), Plaintiffs overstate its import and

16  application here.

17              What is considered a reasonable range is determined in light of the purpose and

18  need of the project.  See Cent. Sierra Envtl. Res. Ctr. v. U.S. Forest Serv., 916 F. Supp.

19  2d 1078, 1090 (E.D. Cal. 2013).  To this point, the CEQ document relied on by Plaintiffs

20  states, "What constitutes a reasonable range of alternatives depends on the nature of

21  the proposal and the facts in each case."  Forty Questions, supra, at 18,027.  The

22  purpose and need here was "for regulation of unmanaged motor vehicle travel by the

23  public," and "for limited additions to the National Forest Transportation system to[

24  p]rovide motor vehicle access to dispersed recreation opportunities . . .[and to p]rovide a

25  diversity of motorized recreation opportunities."  PLU-B-000014.  It was not, as Plaintiffs

26  contend, "to determine how many of the unclassified 1,107 miles would be added to the

27  Plumas National Forest Travel Management Plan."  Pls.' MSJ, at 19.  Accordingly, the

28  ///

1  example provided by the CEQ is of limited value here where there is no 100 or 0 percent

2  option to fulfill the goals of the project.

3      The purpose of a reasonable range of alternatives is to "foster[] informed

4  decision-making and informed public participation." Headwaters, Inc. v. Bureau of Land

5  Mgmt., 914 F.2d 1174, 1180 (9th Cir. 1990) (quoting Block, 690 F.2d at 767).  That

6  purpose was fulfilled here in the alternatives Defendants analyzed.  Defendants

7  considered four action alternatives, eleven other alternatives in less detail, and a no-

8  action alternative.  PLU-B-000062, -0000067, -000081 to -000085.  Comments from the

9  public formed the impetus for almost all of the eleven alternatives not analyzed in detail,

10  and Defendants gave reasons for why each was not analyzed in more depth.  See PLU-

11  B-000081 to -000085; 40 C.F.R. § 1502.14 ("[F]or alternatives which were eliminated

12  from detailed study, [agencies shall] briefly discuss the reasons for their having been

13  eliminated.").  In creating the four action alternatives, Defendants responded to public

14  input, leading to the surveying of an additional 35 miles of routes and the consideration

15  of 155 miles of routes that were not originally included in the Forest Service's original

16  suggested routes.  PLU-B-000085.

17      The range of alternatives fostered informed decision-making and informed public

18  participation, and so Defendants fulfilled the requirements of NEPA.  Cf. Friends of

19  Tahoe Forest Access v. U.S. Dep't of Agric., 641 Fed. App'x 741, 744 (9th Cir. 2016)

20  ("Plaintiffs have failed to show how considering additional alternatives would have

21  fostered more informed decision making than the alternatives that the Forest Service

22  analyzed and rejected based on the adverse environmental impacts it perceived.").

23  Plaintiffs have failed to show that Defendants acted arbitrarily or capriciously in

24  considering action alternatives that were confined to 361 miles of the unauthorized

25  routes.

26  ///

27  ///

28  ///

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.      The Prohibition of Non-Highway Legal Vehicles from Maintenance Level Three Roads Was Reasonable

Plaintiffs argue that Defendants violated their own procedures in prohibiting Off-Highway Vehicles ("OHVs") from all Maintenance Level Three roads in the Forest because they "failed to provide data that demonstrates that the Maintenance Level 3 ban is the minimum restriction required to provide for user safety."  Pls.' MSJ, at 15.  Plaintiffs contend that Defendants' procedures required them "to perform appropriate engineering analyses" before making such a determination.  Id.  Because agencies must follow their own procedures, they conclude, the prohibition on OHVs from Maintenance Level Three roads was unlawful.  Id.; see also Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").  Plaintiffs, however, again misconstrue Defendants' documents.

None of the documents Plaintiffs cite stand for the proposition that an engineering analysis must be conducted before prohibiting OHVs from Maintenance Level Three roads.  They all, in fact, state almost the entirely opposite proposition:  Such analyses need to be conducted when allowing OHVs on Maintenance Level Three roads.  E.g., PLU-D-00008356 ("The analysis that supports a decision to allow mixed use on Maintenance Level 3-5 roads must consider the probability and severity of accidents." (emphasis removed)).  Thus, the Forest Service did not act unlawfully because it did not contravene its own procedures.

Plaintiffs also contend that the Forest Service "does not generally prohibit mixed use" on Maintenance Level Three roads, but instead that "such use normally depends on state traffic law."  Pls.' Resp. & Reply, at 7–8 (citing 36 C.F.R. § 212.5(a)(1)).  Thus, they continue, Defendants' default position of prohibiting OHVs from such roads derives from their interpretation of state law, and that interpretation deserves no deference.  Id. at 8.  Plaintiffs, however, ignore a key exception to the relevant regulations.  State traffic laws apply only to the extent they are not "in conflict with" the Forest Service's designations and authority to restrict "use by certain classes of vehicles or types of traffic."  36 C.F.R.

12

§ 212.5(a).  Though Defendants may have relied in part on state traffic laws to determine what kinds of vehicles should be allowed on Maintenance Level Three roads, see Defs.' Opening Br., ECF No. 37-1, at 14, their authority to designate which kinds of vehicles may be used on which kinds of roads does not depend on state law.  Plaintiffs have therefore not demonstrated that the prohibition of OHVs from all Maintenance Level Three roads is arbitrary or capricious or otherwise unlawful.

> **D.    Defendants Properly Coordinated with Local Governments Under NEPA and the Travel Management Rule**

NEPA requires agencies to "cooperate with State and local agencies to the fullest extent possible to reduce duplication between NEPA and comparable State and local requirements."  40 C.F.R. § 1506.2(c).  An FEIS must also "include discussion of . . . [p]ossible conflicts between the proposed action and the objectives of Federal, regional, State, and local . . . land use plans, policies[,] and controls."  Id. § 1502.16.  The Travel Management Rule, too, requires that "[t]he responsible official . . . coordinate with appropriate Federal, State, county, and other local governmental entities . . . when designating National Forest System roads."  36 C.F.R. § 212.53.

Plaintiffs argue that Defendants violated these requirements by failing to coordinate with Butte and Plumas Counties and by failing to address conflicts with certain of the Counties' road and transportation plans.  Pls.' MSJ, at 20–21.  County roads that lead into the Plumas National Forest allow OHVs, and Plaintiffs claim that the prohibition of such vehicles on Maintenance Level Three roads conflicts with the Counties' policies.  Id. at 23.  Plaintiffs also claim that the DEIS and FEIS failed to consider "the connection between Plumas National Forest routes and the road system of the Counties" and "the opportunities for County roads to serve as connectors between Plumas National Forest routes for motorized vehicle use."  Id.  Plaintiffs have again failed to show that Defendants did not fulfill their obligations under NEPA or the Travel Management Rule.[6]

---

[6] Plaintiffs acknowledge that the Travel Management Rule does not define "coordination" and so rely on NFMA's coordination requirements at the time.  See Pls.' Resp. & Reply, at 8–9.  As noted above,

1     First, Plaintiffs claim that Defendants' engagement with the Counties was no

2  "more than the general public notice and comment afforded all interested parties under

3  the Travel Management Rule and NEPA."  Pls.' Resp. & Reply, at 8.  Defendants,

4  however, did not limit the Counties' participation to the general ability of the general

5  public to participate in the notice and comment process.  The record shows that four

6  formal meetings and six informal meetings took place between Defendants and Plumas

7  County officials.  PLU-A-000057; see also PLU-E-000058 (list of informal meetings with

8  Plumas County officials).  Similarly, Defendants "offered to set up private, individual

9  meetings with two Butte County Supervisors."  Id.  Defendants also corresponded with

10  County officials about the project.  See, e.g., PLU-D-007890 (exchanging maps via

11  email).

12     Second, Plaintiffs complain that Defendants did not "consider the opportunities for

13  County roads to serve as connectors between Plumas National Forest routes for

14  motorized vehicle use."  Pls.' MSJ, at 23.  This, however, is also belied by the record.

15  For example, in response to a comment to the DEIS, Defendants stated that "we will

16  utilize county roads as connectors" and that county roads would appear on the ultimate

17  Motor Vehicle Use Map.  PLU-B-001223.  Plaintiffs' objection is therefore more properly

18  characterized as substantive.  They object to the Forest Service's decision to "institute[]

19  an across-the-board ban on off-road vehicle use on Maintenance Level 3 roads in the

20  Forest, even though the Counties allow off-road vehicle use on County roads of a similar

21  design, surface type, and maintenance level."  Pls.' MSJ, at 23.  The Forest Service's

22  ultimate decision, though, does not demonstrate a lack of coordination or a lack of

23  consideration of the Counties' priorities.  It only evinces a disagreement between the

24  Forest Service and the Counties as to how the project should be implemented.  As

25  ///

26  _____

Plaintiffs have not pleaded an NFMA claim, so the precise terms of the NFMA regulations carry little, if
27  any, weight here.  It does not follow that NEPA or the Travel Management Rule incorporates NFMA's
substantive requirements simply because the NFMA regulations contain a section entitled, "Coordination
28  with other public planning efforts."  36 C.F.R. § 219.7 (1983).

1    NEPA and the Travel Management Rule provide only procedures that Defendants must

2    follow, such substantive disagreements are not actionable under either.

3         Finally, Plaintiffs claim insufficient coordination on the basis that the FEIS lacks

4    any description of "the consistency, or conflicts of, the Forest Service's preferred

5    alternative with local plans, policies, or controls."  Pls.' MSJ, at 24.  Defendants argue

6    that Plaintiffs have failed to identify any inconsistency between the Forest Service's

7    decisions and the Counties' plans, and only show that the Counties' preferences do not

8    align with the Forest Service's.  Defs.' Opening Br., at 18.  Defendants have the better

9    argument.  Plaintiffs do not identify any plans or policies that conflict with the Motorized

10   Travel Management Plan.  For example, Plaintiffs show that Butte County opposed

11   aspects of the Motorized Travel Management Plan because it "will have a significant

12   negative impact on the area's transportation and circulation system."  Pls.' Resp. &

13   Reply, at 9–10 (quoting PLU-A-000321).  Merely because the Motorized Travel

14   Management Plan has a "significant negative impact on the area's transportation and

15   circulation system," however, does not demonstrate any conflict between the Motorized

16   Travel Management Plan and the County's policies or plans.  Plaintiffs also indicate that

17   Plumas County objected to the elimination of "many routes intersecting the Mr. Hough

18   Road (a Plumas County Road)."  Id. at 10 (quoting PLU-A-000151).  That Plumas

19   County might have preferred that such roads be designated part of the NFTS does not

20   demonstrate a conflict with a County plan or policy that required comment or discussion

21   in the FEIS.

22        **E.    Defendants Took the Required "Hard Look" at the Impacts on the
              Human Environment**

23

24   Next, Plaintiffs claim that Defendants failed to analyze the Motorized Travel

25   Management Plan's impact on "the human environment," that is, its "economic or

26   social . . . effects."  Pls.' MSJ, at 24 (quoting 40 C.F.R. § 1508.14).  Specifically, Plaintiffs

27   claim that "[t]he Forest Service failed to take into account the fact that many Forest users

28   cannot access Forest areas . . . without first using motorized vehicles to reach those

areas," failed to account for the "impacts that the drastic reduction in motorized vehicle access would have on the ability of the public to access the forest to obtain food and fuel," and failed to analyze how the Plan "could impact tourism and recreational opportunities in Plumas County." Id. at 25–26.

Once again, Plaintiffs' claims are belied by the record.  Contrary to Plaintiffs' assertions, Defendants addressed the public's ability to cut firewood.  See PLU-B-001216 ("It is believed that fuel wood cutting will not be significantly [a]ffected by the reduced amount of access.  The public will find sufficient areas to meet their firewood needs.").  The Forest Service also addressed impacts to dispersed recreation.  See, e.g., PLU-B-000097 (showing the accessibility of dispersed recreation under the four action alternatives, which ranged from 75 to 92 percent).  Finally, the FEIS explicitly analyzed both the economic impact of the Motorized Travel Management Plan as well as its impact on recreational opportunities.  See PLU-B-000564 to -000577.

### F.    Defendants Adequately Responded to Commends During the Public Comment Period

NEPA requires that an FEIS address comments by the following means, as appropriate:

(1) Modify alternatives including the proposed action.

(2) Develop and evaluate alternatives not previously given serious consideration by the agency.

(3) Supplement, improve, or modify its analyses.

(4) Make factual corrections.

(5) Explain why the comments do not warrant further agency response, citing the sources, authorities, or reasons which support the agency's position and, if appropriate, indicate those circumstances which would trigger agency reappraisal or further response.

40 C.F.R. § 1503.4.  "An agency need only respond to 'significant comments,' those which, 'if adopted, would require a change in the agency's proposed rule.'"  Idaho Farm

///

1   Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1404 (9th Cir. 1995) (quoting Am. Mining Cong.

2   v. Envtl. Prot. Agency, 965 F.2d 759, 771 (9th Cir. 1992)).

3        Plaintiffs contend that Defendants failed to meet these requirements with respect

4   to several comments made during the notice and comment process.  Specifically, they

5   contend that Defendants failed to adequately respond to (1) comments "that the Forest

6   Service's proposed action would have negative impacts on the variety of motorized

7   vehicle riding experiences" in the Forest; (2) several comments made by CORVA;

8   (3) "comments made by Butte County asking the Forest Service to consider non-paved

9   County maintained roads as mixed use roads;" or  (4) Plumas County's comment in

10  opposition to the Forest Service's decision to prohibit "limited vehicle use near

11  designated routes."  Pls.' MSJ, at 26–27.

12       The administrative record, however, shows that all the identified comments were

13  replied to appropriately.  First, regarding the alleged failure to address the variety of

14  experiences available for motorized recreation, Defendants responded to the comment

15  directly, determining that "[t]he abundance of System Roads will provide ample

16  opportunity for the motorized user."  PLU-B-001168.  The FEIS also addressed the

17  impact of the action alternatives on motorized recreation, specifically concluding that the

18  preferred alternative "would have a beneficial effect on motorized opportunities."  PLU-B-

19  000110; see also PLU-B-000094 (explaining that the FEIS used mileage as "an indicator

20  of the number and types of experiences available for motorcycles, ATVs, and 4WDs in

21  each alternative").

22       Second, Defendants responded appropriately to comments made by CORVA.

23  For the most part, Plaintiffs generally object that the Forest Service's responses simply

24  "acknowledged" CORVA's comments.  See Pls.' MSJ, at 27.  They specifically identify

25  only one comment in which CORVA critiques the amount of input the Forest Service

26  received from the public as "not a statistically significant sample."  PLU-B-001582 to

27  -001583.  To this comment, the Forest Service responded:  "Comment acknowledged;

28  does not provide new information."  Id.  CORVA's comment was not a "significant

1   comment" that required anything more in response.  It essentially only expressed

2   dissatisfaction with the number of people who provided comments and participated in

3   the rule-making process.  It did not provide solutions to the perceived problem or provide

4   new information.  Therefore, it was not a comment that, "if adopted, would require a

5   change in the agency's proposed rule."  Idaho Farm Bureau Fed'n, 58 F.3d at 1404

6   (quoting Am. Mining Cong., 965 F.2d at 771).

7        Third, Defendants adequately responded to Butte County's request to consider

8   non-paged County maintained roads as mixed use roads.  Defendants responded, "[W]e

9   will utilize county roads as connectors."  PLU-B-001223.

10       Finally, Defendants also addressed Plumas County's opposition to limiting parking

11  to within one vehicle length from the edge of the trails or roads.  Plumas County urged

12  Defendants to not take that course of action, and Defendants correctly noted that such a

13  limitation is permitted under the Travel Management Rule.  PLU-B-001235 to -001236;

14  see also 36 C.F.R. § 212.51(b) ("In designating routes, the responsible official may

15  include in the designation the limited use of motor vehicles within a specified distance of

16  certain forest roads or trails where motor vehicle use is allowed . . . .").

17       Plaintiffs have only identified dissatisfaction with the ultimate decisions made by

18  Defendants in adopting the Motorized Travel Management Plan.  All the identified

19  comments received adequate responses as required under NEPA.

20       **G.     NEPA Did Not Require a Supplemental Draft Environmental Impact
            Statement**

21

22       NEPA requires that agencies prepare supplements to "either draft or final

23  environmental impact statements if . . . [t]he agency makes substantial changes in the

    proposed action" or if "[t]here are significant new circumstances or information."

24  40 C.F.R. § 1502.9(c)(1).  In either case, the changes must be "relevant to

25  environmental concerns."  Id.  Plaintiffs claim that eight changes that were "presented for

26  the first time in the FEIS" demanded such a supplement:

27

28              (1) restrictions on routes according to season of use,
                (2) implementation of a one-fourth mile buffer for wildlife

18

1    nests, (3) implementation of a one-half mile buffer for private
     land "quiet recreation," (4) the closure of additional roads and
2    trails because the analysis of potential impacts to the
     California red-legged frog from the continued use of these
3    roads was not completed in a timely manner, (5) 47% of
     single-track routes in the French Creek area were closed,
4    (6) the Sly Creek area routes were eliminated, (7) 13 National
     Forest Transportation System routes were eliminated from
5    the map of available routes in the French Creek area, and
     (8) the Law Enforcement Section (Appendix I) was added.
6

7    Pls.' MSJ, at 28 (citations omitted).  Plaintiffs claim that these each were substantial

8    changes to the project.  Plaintiffs, however, are incorrect.

9        Six of Plaintiffs' objections concern the Forest Service's decision to either not

10   include or limit use of certain trails when incorporated in the NFTS.  Plaintiffs do not

11   demonstrate that the non-inclusion of these trails substantively affected the Motorized

12   Travel Management Plan.  Instead, the modifications are all "minor variation[s]" that fall

13   "qualitatively within the spectrum of alternatives."  Great Old Broads for Wilderness v.

14   Kimbell, 709 F.3d 836, 854 (9th Cir. 2013) (quoting Forty Questions, supra, at 18,035).

15   The Forest Service considered adding between zero and 361 miles to the NFTS.  PLU-

16   B-000025 to -000027.  The elimination of a small percentage of those miles from the

17   FEIS falls within the spectrum of the considered alternatives.  Cf. Russell Country

18   Sportsmen v. U.S. Forest Serv., 668 F.3d 1037, 1046–47 (9th Cir. 2011) (finding that

19   "several trail closures that were not included in any of the alternatives discussed in the

20   DEIS" were "'minor variation[s]' that were 'qualitatively within the spectrum of alternatives

21   that were discussed in the draft [EIS]'" (alterations in original)).

22       The remaining two objections are similarly without merit.  Plaintiffs imply, without

23   support, that the Forest Service used a new measurement that "play[ed] a key role in the

24   final impact statement's assessment of the recreational effects of each of the

25   alternatives," by not defining the term "quiet recreation" in the DEIS.  Pls.' Resp. & Reply,

26   at 12.  However, the term "quiet recreation" in the FEIS is merely a new label for the

27   concept of "non-motorized recreation activities displaced by proposed motor vehicle

28   use."  PLU-B-000705 to -000706.  Plaintiffs provide no support for their assertion that

1   this label change effected any substantial change to the Forest Service's analysis.

2   Finally, Plaintiffs' objection to the Law Enforcement appendix is similarly conclusory and

3   without support.  As Defendants note, the addition was "in response to a public comment

4   for law enforcement issues to be addressed" and Plaintiffs have failed to demonstrate

5   that the addition affected the Forest Service's analysis.  Defs.' Opening Br., at 28; see

6   also Russell Country Sportsmen, 668 F.3d at 1045 ("An agency can modify a proposed

7   action in light of public comments received in response to a draft EIS.").

8           **H.      Defendants Were Not Required to Prepare a Cumulative Impacts
                      Statement for Effects Beyond the Borders of the Forest**

9

10          "NEPA requires that where several actions have a cumulative or synergistic

11   environmental effect, this consequence must be considered in an EIS."  City of Tenakee

12   Springs v. Clough, 915 F.2d 1308, 1312 (9th Cir. 1990) (citing Sierra Club v. Penfold,

13   857 F.2d 1307, 1320–21 (9th Cir. 1988)).  Plaintiffs allege that limiting the cumulative

14   impacts analysis of the Motorized Travel Management Plan to the borders of the Plumas

15   National Forest made its analysis deficient.  Pls.' MSJ, at 29–30.  However,

16   "identification of the geographic area" of such an analysis "is a task assigned to the

17   special competency of the appropriate agencies."  Kleppe, 427 U.S. at 414 (1976).

18   Plaintiffs' unsupported assertion that application of the Travel Management Rule to

19   unnamed nearby national forests "will exacerbate all the impacts otherwise attributable

20   to" its application to the Plumas National Forest, Pls.' Resp. & Reply, at 15, is not

21   sufficient to render the Forest Service's discretionary choice arbitrary and capricious, see

22   Friends of Tahoe Forest Access, 641 Fed. App'x at 744 ("we have affirmed that an

23   agency's decision to use a project's boundaries as the geographic scope of its

24   cumulative effects analysis is reasonable, even where a project may have cumulative

25   impacts in a broader geographic area.").

26   ///

27   ///

     ///

28

1

## CONCLUSION

2

3      For the reasons given above, Plaintiffs' Motion for Summary Judgment, ECF

4  No. 31, is DENIED and Defendants' Cross-Motion for Summary Judgment, ECF No. 37,

5  is GRANTED.  Furthermore, Defendants' Motion to Strike, ECF No. 36, is GRANTED IN

6  PART and DENIED IN PART.  The matter having now been concluded in its entirety, the

7  Clerk of Court is directed to close the file.

8      IT IS SO ORDERED.

9  Dated:  March 1, 2017

10

11  _____
    MORRISON C. ENGLAND, JR.
12  UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28